## Case No. 13,792.

### TAYLOR v. GARRETSON et al.

[9 Blatchf. 156; 5 Fish. Pat. Cas. 116.][1]

Circuit Court, N. D. New York. Sept. 28, 1871.

PATENTS — MECHANICAL EQUIVALENT — IMPROVED MOP HEAD.

1. The first claim of the reissued letters patent granted to Luke Taylor, October 19th, 1869, for an "improved mop-head," the original letters patent having been granted to him February 15th, 1859, and reissued November 10th, 1868, and again reissued November 24th, 1868, namely, "In a mop-head, in which the cross-head, or stationary jaw, is attached permanently and immovably to the handle, operating the movable jaw or binder by means of a tubular screw or socket, fitted in the handle, and having its screw-thread on its exterior, in combination with a nut encompassing the screw, and connected with the movable jaw, so as to operate substantially as shown and described," is, in substance, a claim for the described devices, arrangement and organization for operating the movable jaw of a mop-head, in which the cross-head or stationary jaw is attached permanently and immovably to the handle, by means of the screw formed on the exterior of the collar described in the specification, so fitted to, and fixed upon, the handle, as to revolve therein without longitudinal motion, in combination with a nut encompassing the screw, and connected with the movable jaw, so as to operate substantially as shown and described in the specification.

2. The mere substitution of a mechanical equivalent or equivalents for one or more of the elements constituting the combinations and organizations thus claimed, or any merely formal or fraudulently evasive change in the parts or arrangement embraced in the claim, will not relieve a party from liability as an infringer.

3. The second claim of the said reissued patent, namely, "In a mop-head, in which the movable jaw or binder is operated through the medium of a screw-nut or collar, by means of thumb-ears attached to, or formed with, the said screw-nut or collar, placing the said ears outside the yoke or bow of the movable jaw or binder aforesaid, as herein described, for the purpose set forth," is, in substance, a claim to the invention of the described location and use of the thumb-ears attached to the tubular screw or collar, with a screw on its exterior, constructed and operated substantially as described, in a mop-head in which its movable jaw is operated through the medium of such tubular screw or collar, with screw-threads on its exterior, in connection with a proper nut encompassing and acting with such screw.

4. A mop-head constructed in accordance with the description contained in letters patent granted to Oliver S. Garretson, August 13th, 1867, for an "improved mop-head," is not an infringement of the said reissued patent to Taylor, as it does not contain Taylor's revolving collar, with a screw-threaded exterior, or any mechanical equivalent therefor.

[This was a bill in equity by Luke Taylor against Oliver S. Garretson, John G. Garretson, Albert Garretson, and John D. Shepard.]

[Final hearing on pleadings and proofs.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 9 Blatchf. 156, and the statement is from 5 Fish. Pat. Cas. 116.]

[Suit brought on letters patent [No. 22,-990] for an "improved mop-head," granted to plaintiff, February 15, 1859; reissued November 10, 1868 [No. 3,682]; again November 24, 1868, and again October 19, 1869. The specifications and claims of the last reissued patent, and those of letters patent for an "improved mop-head," granted O. S. Garretson, one of the defendants, April 13, 1867 [No. 67,643], will be found in the opinion, and will be fully understood by reference to the accompanying engravings; noting that the screw-thread upon the complainant's device is cut upon an iron collar, c, c, which is turned freely upon the handle by the thumb-pieces, b, b; while, in the mop-head of the defendants', the thread is cut upon the handle, or firmly attached to

Complainant's.

Defendants'

it, the movable jaw being operated by a screw-nut d, d', attached to the thumb pieces, g, g.][2]

George M. Plympton, for plaintiff.
Sprague & Hyatt, for defendants.

HALL, District Judge. This is a suit in equity, for an injunction and account, founded upon reissued letters patent, for an "improved mop-head," dated October 19th, 1869, and which were issued to the plaintiff upon the surrender of reissued letters patent dated November 24th, 1868. The original letters patent were granted to the plaintiff February 15th, 1859, and were surrendered by the plaintiff, and reissued letters patent taken, dated November 10th, 1868. These

[2] [From 5 Fish. Pat. Cas. 116.]

were afterwards surrendered, and the before-mentioned reissued letters patent of November 24th, 1868, were issued in lieu thereof.

The specification and claim · annexed to the reissued letters patent upon which this suit was brought, are as follows: "To all to whom it may concern, be it known, that I, Luke Taylor, of Springfield, in the county of Windsor, and state of Vermont, have invented a new and improved mop-head; and I do hereby declare that the following is a full, clear, and exact description of the same, reference being had to the annexed drawings, making a part of this specification, in which figure 1 is an external view of my invention, figure 2 is a longitudinal section of the same, taken in line XX, fig. 1, similar letters of reference indicating corresponding parts in the two figures. To enable those skilled in the art to fully understand and construct my invention, I will proceed to describe it: A represents the handle of the mop-head, said handle being constructed of a tough, elastic wood, and B represents the stationary jaw of the head, which is of T form, one portion, a, being a socket, which is fitted on the end of the handle A, and secured permanently thereto by means of rivets, a', one or more. On the handle A, below the socket, a, and between said socket and a shoulder, a*, on the handle, a collar, C, of cast iron, is placed, and allowed to turn freely, the lower end of said collar having projections, b, attached, for the purpose of allowing said collar to be readily turned by the hand or thumb and fingers. On this collar there is cast a screw thread, c, on which a nut, D, works. The nut, D, is provided with projecting ears, c', c', at opposite sides of it, and to these ears, c', c', the ends of a jaw, E, are attached. The jaw, E, is formed of a curved wrought-iron rod, so bent that a portion, d, of it will be parallel with the portion, e, of the stationary jaw, B, and the remaining portions, f, f, so bent, that they will pass around the ends of the stationary jaw, B, fitting in recesses therein, and serving as guides, and their lower parts curved, so as to be attached to the projecting ears, c', c', of the nut, D, as shown clearly in fig. 1. The stationary jaw, B, may be of cast iron, malleable, if desired, and the collar, C, with its screw, c, may be of the same material. From the above description, it will be seen, that, by simply turning the collar, C, the jaw, E, will be moved in and out from the stationary jaw, B, and the cloth or mop firmly secured in the head, or between the two jaws, and also readily released or detached therefrom, when necessary. I am aware that the nut operating the movable jaws or binders of mop-heads have been manipulated by means of a nut, with ears or projections placed between the movable jaws or binders and the cross-head. I am, also, aware that mop-heads have been made with an ·external screw-thread of wrought iron or wood, cut on the handle or shaft, and working into a wrought-iron nut, or internal screw, cut into the cross-head or yoke of a movable jaw; but the wooden screw, by reason of its swelling and binding, when wet, and the wrought iron screw rusting and binding, and the fineness or closeness of the screw-threads, made the process of tightening and loosening the mop a slow process, and rendering the mop-head, thus constructed, inoperative and of little value. These, therefore, I do not claim, broadly, or in themselves considered; but what I do claim as new, and desire to secure by letters patent, is: (1) In a mop-head, in which the cross-head, or stationary jaw, is attached permanently and immovably to the handle, operating the movable jaw or binder by means of a tubular screw or socket, fitted on the handle, and having its screw thread on its exterior, in combination with a nut encompassing the screw, and connected with the movable jaw, so as to operate substantially as shown and described. (2) In a mop-head, in which the movable jaw or binder is operated through the medium of a screw-nut or collar, by means of thumb ears attached to, or formed with, the said screw-nut or collar, placing the said ears outside the yoke or bow of the movable jaw or binder aforesaid, as herein described, for the purpose set forth."

From this description of the plaintiff's improved mop-head, any person familiar with the forms of improved mop-heads generally used can, it is believed, obtain a sufficient knowledge of the characteristics and peculiarities of the plaintiff's invention, and of its construction and operation, to understand the questions presented in this case, although the drawings annexed to the specification would, of course, greatly aid one in readily obtaining a full and perfect comprehension of its construction and operation.

The specification and drawings annexed to the original letters patent were, in substance, like those annexed to the last re-issue, except that there was only a single claim, and that of a different character, and that, instead of the two paragraphs which immediately precede the statement of the plaintiff's claims in the foregoing specification, and which relate to prior constructions, the following paragraphs were inserted: "I am aware that a screw has been attached to the handle of a mop-head, and a nut fitted on the screw to actuate the movable jaw; but, as far as I am · aware, the handle is turned with the screw in order to actuate the nut. In my invention the screw is fitted loosely to the handle, and turns separately, and the device is thereby rendered more durable, and the movable jaw may be actuated with greater facility than by the plan alluded to. I do not claim separately any of the parts described."

Immediately following these paragraphs is

the claim, in these words: "But I do claim as new, and desire to secure by letters patent, as an improved article of manufacture, a mop-head, having a loose collar, C, provided with a screw thread, and otherwise made as described."

On the 13th of August, 1867, the defendant Oliver S. Garretson obtained letters patent for an "improved mop-head;" and, in the specification and drawings annexed, he fully described the construction of the mop-head subsequently manufactured and sold by him and by John G. Garretson, and which, it is claimed, was an infringement of the plaintiff's patent. These letters patent were somewhat relied on by the defendants; but, as the only claim made in the specification was, (as will be presently seen,) the "making of the collar of the loose jaw" (or immovable part of the clamp in which the material of the mop is held) "in two parts, so that the nut" (therein referred to as d d) "may be placed between them, and, when connected together, the collar surrounds the nut, and retains it in position, for the purpose above set forth," it is not deemed important upon the question of the infringement of the plaintiff's patent. Indeed, its effect as evidence is more favorable to the plaintiff than to the defendants, for it is fairly to be presumed, either that Garretson did not originally claim any device now claimed to be covered by the plaintiff's patent, or else that such claim was disallowed by the patent office.

The construction and character of the mop-head alleged to be an infringement of the plaintiff's patent, and the precise invention patented to Oliver S. Garretson, may, perhaps, be best shown by copying the specification and claim annexed to his patent. They are in the following words: "To all whom it may concern, be it known, that I, O. S. Garretson, of the city of Cincinnati, in the county of Hamilton, and state of Ohio, have invented a new and useful improvement in the construction of mop-heads, and I do hereby declare that the following is a full, clear and exact description thereof, reference being had to the accompanying drawings, making a part of this specification, in which figure 1 is a perspective view of the head, with a part of the handle attached, the parts being put together complete. Figure 2 is an elevation of the same, part of the nut and part of the collar of the loose jaw being removed, to show the manner in which the flange of the nut enters the collar, and, by being rotated, acts on the screw of the shank or handle, and makes the loose jaw recede from or approach the fixed jaw or cross-head; also, the manner of connecting the parts of the loose jaw together. Figure 3 is a perspective view of that part of the loose jaw that forms the collar, broken in two, to show the recess in which the flange of the nut plays, and the recess designed to receive and retain the smaller parts of the same; or that part that may be formed of wire, as

here represented, with the holes by which, with rivets, the parts are secured together. Figure 4 is the nut, shown in perspective. Like letters indicate corresponding parts of all the figures. My improvement in mop-heads chiefly consists in constructing that part of the loose jaw that forms the collar in two parts or halves, with the inner surfaces properly grooved to receive and retain the flange or wings of the nut, and to allow it to have a free rotary motion, by which means the parts with the recesses and rivet-holes may be cast complete, requiring no drilling or reaming in putting together. As represented in Fig. 1, a, a, is the fixed jaw or cross-head, and is cast hollow, to receive the handle, h. In Fig. 2 the loose jaw is marked b, b, c, c; and here one part of it, marked c, c, is removed, the better to show the recess in which the flange of the nut, d, d, plays. Part of the nut is also removed, to show how the thread of the screw on its inner surface acts on the screw on the shank or handle, h, and the flange is retained in the recess in the loose jaw, when, by rotating the nut by the thumb-pieces, g, g, Fig. 4, the loose jaw, b, b, c, c, must recede from or approach the fixed jaw for the purpose of receiving and retaining the mop. Fig. 4 is the nut, shown in perspective, with one thread of a screw on its inner surface, to match the screw on the shank or handle, h, with its thumb-pieces, g, g, by which it is rotated. Part of the flange on its outer surface is also lacking, better to adapt it to be moulded and cast without coring. The important advantage gained by my construction of the mop-head is, that, by constructing that part of the loose jaw that forms the collar for the nut in two parts or halves, it, with its recesses and rivet-holes, may be cast complete, and will require no drilling or reaming in putting together, a great saving of labor in constructing, and, when done, forms a neat, compact and durable article. The operation or manner of using it is, to turn the nut by its thumb-pieces, g, g, Fig. 4, and the loose jaw recedes from the fixed jaw or cross-head, and the mop may be inserted. Turning the nut in an opposite direction brings the loose jaw and the cross-head near together, and the mop is held firmly in position. What I claim as my invention, and desire to secure by letters patent, is, making the collar of the loose jaw in two parts, so that the nut, d, d, may be placed between them, and, when connected together, the collar surrounds the nut, and retains it in position for the purpose above set forth."

It is the manufacture and sale of the mop-head thus described, which, and which alone, is insisted upon as an infringement of the plaintiff's patent. Such manufacture and sale by the first-named two defendants are admitted, but it is denied that this was an infringement of the plaintiff's rights. The validity of the patent on which the suit is

brought is also denied upon the ground of the want of novelty. It was also insisted that both claims of the plaintiff's patent were invalid, (1) because they are broader than the alleged invention shown and described in the specification; (2) because they each include inoperative devices; (3) because they are each ambiguous and uncertain.

It was conceded, at the hearing, that there was no proof that the defendants Albert Garretson and John D. Shepard, or either of them, had infringed the plaintiff's patent, and as to them the plaintiff's bill must, of course, be dismissed.

The question of novelty in the actual invention of the plaintiff may be summarily disposed of. There can be no doubt, upon the evidence in the case, that the plaintiff was the first to introduce into a mop-head in which the cross-head or stationary jaw was rigidly and permanently attached to the handle, the described and peculiar arrangement and devices for forcing in either direction the movable jaw of such mop-head, and holding it in place when the required degree of pressure upon the material of the mop proper had been attained. Whether the plaintiff's claims are broader than his actual invention must depend upon the construction to be given to the language used by the patentee, and this construction will be presently considered.

The limited character and scope of the plaintiff's claims, the carefully expressed disclaimers contained in his specification, and the evidence given in respect to the devices and organizations which had been used for similar purposes prior to the time of the plaintiff's invention, satisfactorily prove that the plaintiff's invention was simply an improvement upon the previously existing organizations and devices for moving, and holding in position, as might be desired, the movable jaw of a mop-head, by means of a single screw. This must be constantly borne in mind, while considering the scope and character of the plaintiff's actual invention, and the construction proper to be given to the claims contained in his last amended specification, and also in determining the question of infringement. The plaintiff's invention being only an improvement of certain parts of a known machine, he cannot treat another as an infringer because he has improved the previously existing machine or machines, by using a form, construction, device or combination substantially different from that invented and patented by the plaintiff, though performing the same functions (McCormick v. Talcott, 20 How. [61 U. S.] 402; Burr v. Duryee, 1 Wall. [68 U. S.] 531, 573, 574); and it may be well, also, to bear this in mind, in considering the question of construction, as it must be borne in mind and regarded in considering the question of infringement:

Ordinarily, the claim of a patentee should be so construed as to secure to him the exclusive right to control the use of his actual invention, if this can be done without violence to the language of his claims; but this general rule would hardly be acted upon in a case where it was evident that his claims had been expressed in loose, ambiguous or general terms, for the fraudulent purpose of apparently covering subsequent inventions, especially where the objectionable claim had been first introduced in a re-issue, for the purpose of covering the subsequent invention of another. Burr v. Duryee, 1 Wall. [68 U. S.] 531, 575; Case v. Brown, 2 Wall. [69 U. S.] 320.

Under the general rule last stated, the first claim of the plaintiff's patent is, in substance, a claim for the described devices, arrangement and organization for operating the movable jaw of a mop-head, in which the cross-head or stationary jaw is attached permanently and immovably to the handle, by means of the screw formed on the exterior of the collar described in the plaintiff's specifications, so fitted to, and fixed upon, the handle, as to revolve thereon without longitudinal motion, in combination with a nut encompassing the screw, and connected with the movable jaw, so as to operate substantially as shown and described in the plaintiff's specification. Of course, the mere substitution of a mechanical equivalent or equivalents for one or more of the elements constituting the combinations and organizations thus claimed, or any merely formal or fraudulently evasive change in the parts or arrangement embraced in the claim, would not relieve a party from liability as an infringer.

The addition, in this first claim, of the term, "socket," if intended as the alternative of the term, "tubular screw," and to refer to the same thing, was unnecessary, and, perhaps, improper; and it can have no effect, unless it can properly be construed to extend the claim to the socket and screw upon its exterior, found in the Garretson mop-head. If so construed, it would certainly be extended beyond the limits of the plaintiff's actual invention; and, perhaps, it ought to be considered, that the term, "socket" was so inserted, upon the re-issue, for the fraudulent purpose of suppressing Garretson's subsequent invention. But, as this case will be here determined upon other grounds, this question will not be discussed or decided.

The second claim of the plaintiff, under the general rule before stated, is, in substance, a claim to the invention of the described location and use of the thumb-ears attached to the tubular screw or collar, with a screw on its exterior, constructed and operated substantially as described, in a mop-head in which its movable jaw is operated through the medium of such tubular screw or collar, with screw threads on its exterior, in connection with a proper nut encompassing and acting with such screw. The insertion of the term, "screw-nut," in this claim, was unnecessary and improper, and justifies, at

least, a suspicion, that it was inserted for the fraudulent purpose of suppressing the subsequent invention of Garretson.

In confirmation of the view taken of the scope and character of the plaintiff's claims, and of his actual invention, and, also, as preparatory to a discussion of the character, office and operation of the devices and arrangement used in the Garretson mop-head for like purposes, with a view to the proper determination of the question of infringement, it may be well, at this point, to refer to and describe the devices and arrangements adopted for similar purposes in two previously existing organizations. The first of these is the mop-head described in letters patent granted to Alexander Barnes, November 20th, 1855; and the other the mop-head marked "defendants' Exhibit F;" it being satisfactorily proved, that mop-heads of the same character had been in use long prior to the plaintiff's invention. Both of these, in most of the parts not now in controversy, or not presently referred to and described, are quite similar, in their general organization, and in their principles, or modes of operation, to both the Taylor and Garretson mop-heads; and, taken together, they may be properly considered as representing the state of the art at the time of the plaintiff's invention.

In the first, the cross-bar, which forms what is termed, in the plaintiff's claim, the cross-head or stationary jaw, was so arranged and fixed as to revolve upon the end of an iron rod inserted in the wooden portion of the handle of the mop, and upon which iron rod was cut the operative screw by which the movable jaw of the mop-head was moved and held in place. The movable jaw was similar to that of the Taylor mop-head, with its arms or ends connected together by a short cross-bar, having a female screw in the middle lines of its length and breadth, being, in fact, a nut with ears, like that in the plaintiff's mop-head, except that its screw threads were finer, and that the diameter of the screw required to fit and fill it (the screw being of wrought iron) was not so large. The screw threads on the exterior of the iron rod to which the stationary jaw was so fixed, corresponded and co-operated with those in the short cross-bar or nut with ears, before referred to. The movable jaw in this organization was, therefore, moved and operated by turning the handle and its screw, while the stationary jaw was so held as to prevent its revolution. The construction and arrangement just described were objectionable, because an unequal pressure upon the different arms of the mop-head might give it a revolving motion, in such manner and direction as to open or loosen its jaws, and release their firm hold upon the materials of the mop proper. The fineness of the threads of the screw, and the danger that rust upon its surface might interfere with its uniform and successful opera-

tion, may, also, have been slight objeections to its general adoption.

In the construction shown by the defendants' Exhibit F, the iron rod and screw of the Barnes mop-head were rigidly and permanently attached to the stationary jaw, as well as to the wooden portion of the handle of the mop, and there was, therefore, no female screw cut in the short cross-bar through which the screw passed, as in the Barnes mop-head; but, the required action of the movable jaw, for the purpose of effectually clamping and holding, or of releasing, the material of the mop, was produced by turning a nut with thumb ears, placed upon the screw between the short cross-bar and the stationary jaw. This construction was objectionable, because the position of the nut with thumb ears was inside the yoke or bow of the movable jaw, and, therefore, not so easily operated; and the fineness of the screw and the danger of rust, as before stated, in respect to the Barnes mop-head, may, also, have been considered slight objections to its general adoption and use.

As an improvement upon the Barnes mop-head, the plaintiff's invention was, in substance, this: He attached the stationary jaw to the handle in such manner that the handle could not revolve without a corresponding motion of the mop-head; and, in order that the proper motion and action might be given to the movable jaw, by means of a screw on the handle of the mop, working in the eared nut or female screw of the short cross-bar, he cut the proper screw threads upon the exterior of a collar placed and fixed upon the handle, instead of cutting the screw upon the main body of the handle itself. This construction enabled him to place his thumb-ears outside the bow of the stationary jaw, instead of inside of it, as had been done in the mop-head represented by the defendants' Exhibit F, and in the other organizations referred to in the plaintiff's disclaimer. The great and distinguishing feature of his invention was, therefore, the introduction and use of a screw revolving, without longitudinal movement, around the main body of the mop-handle, and operated by the use of thumb-ears outside the bow of the movable jaw.

Considered as an improvement upon mop-heads like those represented by the defendants' Exhibit F, the plaintiff's invention consisted in converting the short cross-bar of the movable jaw into an eared nut, and giving it motion in both directions, and securing it in place, by the introduction and action of the collar and its exterior screw, this collar, with its exterior screw, thus constituting, as before stated, the principal and distinguishing feature of his invention.

Neither of the separate parts of the plaintiff's new arrangement and organization was claimed, or could have been claimed, as new; for, all of them, including the revolving collar, with the screw upon its exterior,

and working in a nut, to produce longitudinal motion, while it was itself so held as to prevent its moving longitudinally, had been before used in other organizations. Such screw collars had been used for an analogous or similar purpose in larger wrenches, a specimen of which was given in evidence.

The Garretson mop-head is an extremely limited, but, doubtless, valuable, improvement upon the mop-head represented by the defendants' Exhibit F. Garretson's improvement consists, mainly, in casting the short cross-bar of the movable jaw in two longitudinal sections or pieces, of such form, that, when united, there shall be a large circular orifice in the middle lines of their united length and breadth, with a channel or recess cast or formed therein, of such form and dimensions as may be required to receive and hold, as against any but a revolving motion, a nut with an exterior flange fitted to, and revolving in, the channel or recess so provided for it in the short cross-bar, thus enabling the operator to move in either direction, and fix in its proper position the movable jaw of the mop-head, by revolving the nut upon the screw cast upon the socket or iron portion of the mop-handle. This having been accomplished, it was obvious, that the thumb ears of the nut should be placed, outside the bow of the movable jaw, and this location of the thumb ears of the nut was, accordingly, adopted.

The Garretson device has, perhaps, no advantage over that of the plaintiff, except in cheapness of cost of construction, and, possibly (judging from the statement in regard to the swelling of wooden screws, in the plaintiff's specification), in avoiding the danger of failure in the proper or easy action of the plaintiff's device, by reason of the swelling of the wooden portion of the mop-handle upon which it is intended to revolve.

The iron rod in the Barnes mop-head and in that represented by the defendants' Exhibit F, on which the screw was cut, and the socket cast upon the stationary jaw of the Taylor and the Garretson mop-heads, are parts of the mop handles to which the stationary jaws are attached; and the placing of the screw upon the socket of the Garretson mop-head, and the use of coarser threads in the operating screws, are only differences of degree and in mechanical construction; and a change from one to the other is not a patentable invention.

The changes in the arrangement, form and construction of the parts concerned in the mechanical movement and retention in place of the movable jaw of the mop-head in use prior to the invention of Taylor, which were made by him and by Garretson, were both meritorious improvements upon such mop-heads, and patentable inventions; and, in my judgment, the two devices, in construction and arrangement, are substantially and essentially different, and, also, substantially different in their modes of operation. The Garretson mop-head does not contain the revolving collar with a screw-threaded exterior; and the introduction and use of this collar is the main and most essential feature of the plaintiff's invention. Nor does it contain any mechanical equivalent of such screw-threaded revolving collar, which could have been substituted for it without meritorious and substantial invention. Imparting motion to the movable jaw of a mop-head, by means of a revolving nut, working upon a screw cut upon the socket or handle rigidly attached to the mop-head, and also connected with the short cross-bar of the movable jaw in such manner as to allow it to revolve upon the screw without any other motion separate from that of the cross-bar, required the exercise of the inventive faculty in no small degree; and it is quite certain that the Garretson device, in its construction and arrangement of parts, and in its principle and mode of operation, is substantially and essentially different from the actual invention of the plaintiff. The two devices are supposed to be equally efficient and useful; but it was testified by one of the defendants' experts, and not disproved, that the Garretson device was to be preferred, because the cost of its construction was less than the cost of the device invented by the plaintiff.

In short, no infringement of the plaintiff's right has been established, and, for that reason, the plaintiff's bill is dismissed, with costs. The other questions presented by the learned counsel of the respective parties may, therefore, properly be left without further discussion.

[Patent No. 67,643 was granted to O. S. Garretson, August 13, 1867. For other cases involving this patent, see Garretson v. Clark, Case No. 5,248; Id., 111 U. S. 120, 4 Sup. Ct. 291.]